UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL CARTER,<br>     Plaintiff, | :<br>:<br>: |
| v. | :     3:20cv918 (KAD) |
| | : |
| WARDEN OF BRIDGEPORT<br>CORRECTIONAL CENTER,<br>CORRECTION OFFICER BALLARD,<br>CORRECTION OFFICER FOWLKES,<br>CORRECTION OFFICER MARTIN,<br>LIEUTENANT MACDONALD,<br>     Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Daniel Carter, filed this civil rights action pursuant to 42 U.S.C. § 1983 while a pretrial detainee in the custody of the Connecticut Department of Correction ("DOC"). In his complaint, he alleges the use of excessive force in violation of his Fourteenth Amendment rights, against Bridgeport Correctional Center ("BCC") Correction Officer Fowlkes, Correction Officer Ballard, and Correction Officer Martin in their individual capacities. Carter seeks money damages.[1]

On March 11, 2021, Defendants filed a Motion for Summary Judgment on the basis of Carter's failure to exhaust his administrative remedies in compliance with the Prisoner Litigation Reform Act. Mot. for Summ. Judgment, ECF No. 31. Defendants provided Carter with a notice in compliance with Local Rule of Civil Procedure 56(b) that informed him that judgment may be entered against him on his claims if he did not "file papers as required by Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the Local Rules of Civil Procedure" and if the

---

[1] All other claims were dismissed upon Initial Review. See ECF No. 8.

Defendants' motion shows the defendants' entitlement to entry of judgment as a matter of law. Notice to *Pro Se Litigant*, ECF No. 31-2. He was therein advised to review "very carefully" the copies of the attached rules. *Id.* at 1. On March 22, 2022, Carter filed a motion to oppose summary judgment, in which he requested that the Court not dismiss his case because he had deposited his grievance appeal in the grievance box the day after he received his grievance denial. Mot. to Opp., ECF No. 32. The Court construes this motion as Carter's opposition to the Defendants' motion for summary judgment.

For the reasons that follow, the motion for summary judgment is granted.

**STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense...." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on

conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**DISCUSSION**

**Exhaustion under the Prison Litigation Reform Act ("PLRA")**

The PRLA, which governs actions brought by prison inmates, requires prisoners to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions.[2] 42 U.S.C. 42 US.C. § 1997e(a).  Failure to exhaust is an affirmative defense under the PLRA, 42 U.S.C. § 1997e; *Jones v. Bock*, 549 U.S. 199, 217 (2007); and a defendant bears the burden to prove that an inmate did not exhaust his or her remedies prior to filing the action in court. *See Johnson v. Mata*, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of

---

[2] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").[3]

Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95. Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83–84).

The exhaustion requirement, however, may be excused when the remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). The United States Supreme Court has identified three circumstances under which an inmate need not exhaust the administrative

---

[3] Although a defendant bears the burden on this affirmative defense at all times, the plaintiff may still have to adduce evidence in order to defeat a motion for summary judgment. *See Hudson v. Kirkey*, No. 920CV0581LEKDJS, 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021) (explaining that once defendant introduces evidence of a functional grievance system, plaintiff could not survive summary judgment without submitting competent evidence to indicate unavailability). While it is Defendants' burden to establish a failure to meet the exhaustion requirement, the plaintiff bears the burden of demonstrating that such a process was unavailable. *Brooks v. Mullen*, No. 14-CV-6690-FPG, 2020 WL 6158614, at *5 (W.D.N.Y. Oct. 21, 2020) (citations omitted).

procedure: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

<u>Administrative Remedies Under Administrative Directive 9.6[4]</u>

Administrative Directive 9.6 "provide[s] a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority[.]" A.D. 9.6(1). Carter was therefore obligated to exhaust his administrative remedies for his Fourteenth Amendment claims against custody staff under Administrative Directive 9.6 prior to filing this action. *Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016) (affirming district court's dismissal based on inmate's failure to exhaust his claim of correction officer's use of excessive force under Administrative Directive 9.6). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218.

Administrative Directive 9.6(6) requires an aggrieved inmate to first seek informal resolution prior to filing a grievance. A.D. 9.6(6)(A). It provides that "the inmate shall submit a written request via CN 9601, Inmate Request Form" in the event that "the verbal option does not resolve the issue." *Id.* Administrative Directive 9.6(6)(C) specifically states that the inmate must include a copy of the Inmate Request Form (CN 9601) with the grievance (CN 9602), or

---

[4] Defendants have submitted the relevant version of Administrative Directive 9.6 as an exhibit. *See* ECF No. 31-5.

5

an inmate must explain its absence.

The Level-1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the Grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. A.D. 9.6(6)(C). The Unit Administrator shall respond in writing to the Level-1 Grievance within thirty business days of his or her receipt of the Grievance. *See* A.D. 9.6(6)(I). The inmate may appeal the disposition of the Level-1 Grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. A.D. 9.6(6)(G), (I) & (K). A grievance returned without disposition due to a failure to comply with procedural requirements of Administrative Directive 9.6 may not be appealed. *See* A.D. 9.6(6)(G).

A Level-2 Appeal of a disposition of a Level-1 Grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level-1 Grievance. *See* A.D. 9.6(6)(K). The Level-2 Appeal of the Unit Administrator's failure to dispose of the Level-1 Grievance in a timely manner must be filed within 65 days from the date the Level-1 Grievance was filed by the inmate. *See* A.D. 9.6(6)(M).

Level-2 Appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. A.D. 9.6(6)(K). The District Administrator is required to respond to the Level-2 Appeal within thirty business days of receipt of the appeal. *See id*.

Level-3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level-2 Appeals to which there has been an untimely response by the District Administrator. A.D. 9.6(6)(L). A Level-3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level-2 Appeal. *See id*. A Level-3 Appeal of the

District Administrator's failure to dispose of the Level-2 Appeal in a timely manner must be filed within 35 days of the filing of the Level-2 appeal. A.D. 9.6(6)(M). A Level-3 Appeal is reviewed by the Commissioner of Correction or his or her designee. A.D. 9.6(6)(L).

Here, Defendants have submitted evidence demonstrating that Carter's remedies under Administrative Directive 9.6 were available and that he failed to satisfy all of the steps under Directive 9.6 for exhaustion prior to filing this action.

The following facts from Defendants' Rule 56(a)1 statement are admitted as undisputed as they are properly substantiated by the record evidence.

Carter alleges that on January 31, 2020, he was assaulted by the Defendants. Compl. at ¶¶ 1-5, ECF No. 1.

In her declaration, Michaela McCarthy, who was employed as an Administrative Remedies Coordinator at BCC from November 2019 through August 2020, avers to the following facts. McCarthy declar. at ¶ 5, ECF No. 31-4.

Inmates at BCC file their administrative grievances in designated "grievance boxes," which are located throughout the facility and checked by staff. Defs.' Rule 56(a) at ¶ 6; McCarthy declar. at ¶¶ 6-7. Ms. McCarthy collected grievances from the boxes several times each week. Upon receipt of a grievance, the grievance is contemporaneously recorded in the BCC Grievance Log Book, and the inmate is provided with a receipt for that grievance. Defs.' Rule 56(a) at ¶ 7; McCarthy declar. at ¶ 8.

McCarthy reviewed Carter's administrative grievance filings. McCarthy declar. at ¶ 9. Carter filed a Level-1 Grievance (IGP # 123-20-050) that was received on April 1, 2020; in it, he asserted that "sometime in early February" he was assaulted by another inmate and two correctional officers. Defs.' Rule 56(a) at ¶ 2; *see* McCarthy declar. at 4-5(Grievance). McCarthy

7

recorded this Level-1 Grievance in the BCC Log Book. McCarthy declar. at ¶ 10; *id.* at 17 (Grievance Log Book). This Level-1 Grievance was denied on April 15, 2020, and Carter was advised that he could file a Level-2 appeal. Defs.' Rule 56(a) at ¶ 3; McCarthy declar. at ¶ 11.

On May 1, 2020, McCarthy picked up and logged Carter's Level-2 Appeal into the Grievance Log Book on. Defs.' Rule 56(a) at ¶¶ 4, 9; McCarthy declar. at ¶ 12. She also provided Carter with an Administrative Remedy receipt on that same date. *Id.; see id.* at 6 (receipt). She forwarded the Level-2 Grievance to the District Administrator, who rejected Carter's Level-2 Grievance as untimely. *Id.* at ¶ 14; Defs.' Rule 56(a) at ¶ 5. The District Administrator explained that although Carter's Level-2 Grievance Appeal was dated April 16, 2020, the "facility Administrative Remedies Coordinator did not receive this appeal until [May 1, 2020,]" which was not within five days of the April 15, 2020 denial of the Level-1 grievance. McCarthy declar. at 7 (Level-2 Grievance Appeal)

BCC Grievance Coordinator McCarthy worked her regular work schedule during the time frame from April 15, 2020 to May 1, 2020, and during that period, she received and processed numerous grievances from other inmates. Defs.' Rule 56(a) at ¶ 8; McCarthy declar. at ¶ 16.

"Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (citation and internal quotation marks omitted).

Defendants have submitted evidence establishing that Carter failed to exhaust his Fourteenth Amendment claims by using all of the steps set forth under Administrative Directive 9.6 prior to filing his complaint as required by the PLRA. Specifically, he failed to file a Level 2 Appeal within 5 days of the denial of his Level 1 Grievance. In this vein, the Level 2 Appeal is logged as received on May 1, 2020 and Ms. McCarthy was working and retrieving and logging grievances throughout the time period April 15, 2020 through May 1, 2020. In response, Carter provides no evidence to support his mere allegation that he filed the Level-2 Appeal on April 16, 2020, and he has not refuted Defendants' evidence that McCarthy provided him with a receipt for his Level 2 Appeal on May 1, 2020. Finally, there is no evidence from which to infer that Carter's administrative remedies were unavailable as contemplated by *Ross*. *See Otero v. Purdy*, No. 3:19-CV-01688 (VLB), 2021 WL 4263363, at *10 (D. Conn. Sept. 20, 2021) (noting plaintiff's prior grievance filing demonstrated availability of administrative remedies). Nor has Carter advanced such an argument.

Thus, the Court concludes that Defendants have met their burden of demonstrating no genuine issue of material fact relevant to Carter's failure to exhaust his remedies under Administrative Directive 9.6. The motion for summary judgment is GRANTED.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment [ECF No. 31] is GRANTED. The motion to oppose summary judgment is MOOT [ECF No. 32] because it is construed as an opposition to the motion for summary judgment. The clerk is instructed to enter judgment in Defendants' favor and to close this case.

SO ORDERED this 25th day of October 2021, at Bridgeport, Connecticut.

       /s/  
Kari A. Dooley

9

United States District Judge